**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE**

Jonathan Andrew Perfetto

      v.                                      Civil No. 06-cv-307-SM

Bruce W. Cattell, Warden,
New Hampshire State Prison, et al.[1]

**<u>REPORT AND RECOMMENDATION</u>**

Before the Court is Jonathan Andrew Perfetto's complaint

---

[1]Perfetto has named the following defendants, employees of the New Hampshire Department of Corrections ("NHDOC") and/or the New Hampshire State Prison ("NHSP") as defendants to this matter: NHSP Warden Bruce W. Cattell, NHDOC Commissioner William L. Wrenn, NHSP Unit Manager Lucy Bilodeau, NHSP Counselor Robert McGrath, NHSP Sgt. First Name Unknown ("FNU") O'Brien, NHSP Lt. Joe Michaud, NHSP Cpl. FNU Brown, NHSP Sex Offender Treatment Program Director Kim Marsh, former NHSP Warden Jane Coplan, NHSP Maj. Ross Cunningham, former NHDOC Commissioner Steven Curry, NHSP Corrections Officer ("CO") FNU Charter, NHSP inmate Timothy Wheeler, NHSP CO FNU Fidelli, NHSP CO FNU Enmark, NHSP CO FNU Valente, NHSP CO FNU Ash, NHSP CO FNU Leitner, NHSP Medical Department (all staff), NHSP Sgt. FNU Perron, NHSP CO FNU Washburn, NHSP Mental Health Department (all staff), NHSP CO FNU Edsil, NHSP Officer in Charge of H-Building First Shift, NHSP CO FNU Isman, NHSP CO FNU Isabelle, NHSP CO FNU Mosher, Secure Housing Unit (all staff), NHSP CO FNU Bell, NHSP Sgt. FNU Provencher, NHSP Unit Manager Matthew Moyer, NHSP CO Jessica Mallette, NHSP CO FNU Flynn, NHSP Dr. FNU Fellows, NHSP Unit Manager Tim Moquin, NHSP Lt. FNU Gauthier, NHSP Sgt. FNU Parent, NHSP Sgt. FNU Desmond, former NHSP Sex Offender Treatment Program Director Irene McCormack, and NHSP COs John Does #1–#6.

(document nos. 1, 15 & 24)[2], filed pursuant to 42 U.S.C. § 1983.
Perfetto alleges that the defendant employees of the New
Hampshire Department of Corrections ("NHDOC") have violated a
number of Perfetto's constitutional rights during his
incarceration at the New Hampshire State Prison ("NHSP").  The
complaint is before me for preliminary review to determine
whether, among other things, it states any claim upon which
relief might be granted.  See 28 U.S.C. § 1915A; United States
District Court for the District of New Hampshire Local Rule
("LR") 4.3(d)(2).  For the reasons stated herein, I direct, in an
Order issued simultaneously with this Report and Recommendation
(hereinafter the "Simultaneous Order"), that the claims alleging
deprivation of sanitary conditions proceed against defendants
Valente, Ash, Fidelli, and Charter; the claim alleging denial of
water proceed against a John Doe defendant; the claims alleging
failure to protect Perfetto's safety proceed against defendants

---

[2]Perfetto filed his initial complaint in this matter
(document no. 1) on August 18, 2006.  Perfetto then successfully
moved to consolidate this matter with another pending case in
this Court, Perfetto v. Cattell, Civ. No. 06-cv-372-PB.  The
complaint in that case was then docketed in this case (document
no. 15) on November 16, 2006.  On January 3, 2007, Perfetto filed
an addendum to the November 16 complaint (document no. 24).  All
three of these documents, in the aggregate, will be considered to
be the complaint in this matter for all purposes.

Moyer, Bell, Washburn, Flynn, Moquin, Gauthier, and Parent; the excessive force claims proceed against defendants Charter, Wheeler, Fidelli, and Enmark; the denial of adequate medical care claims proceed against defendants Charter, Moyer, Ismam, Flynn, and a John Doe defendant; the retaliation claim proceed against defendants Bilodeau, McGrath, O'Brien, Michaud, Brown, and Marsh; the denial of access to the courts claim proceed against defendants O'Brien and Brown; and the right to petition the government to redress grievances through the administrative grievance procedure proceed against defendants Charter, Edsil, and Isabelle.  I recommend that all of the official capacity claims, the claims alleging denial of clothing, denial of food, denial of appropriate housing, denial of lower security classification, verbal harassment, denial of adequate mental health care, denial of rehabilitative programming, denial of religious practice, denial of personal property, and named defendants Cattell, Wrenn, Coplan, Cunningham, Curry, Leitner, Perron, Mosher, Provencer, Mallette, Fellows, and Desmond be dismissed from this action.

<u>Standard of Review</u>

Under this Court's local rules, when an incarcerated plaintiff commences an action pro se and in forma pauperis, the magistrate judge must conduct a preliminary review and prepare a report and recommendation discussing whether the complaint or any portion thereof should be dismissed because:

> (I) the allegation of poverty is untrue, the action is frivolous, malicious, or fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief under 28 U.S.C. § 1915A(b); or
>
> (ii) it fails to establish subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1).

LR 4.3(d)(2).  In conducting the preliminary review, the Court construes pro se pleadings liberally.  <u>See</u> <u>Ayala Serrano v. Lebron Gonzales</u>, 909 F.2d 8, 15 (1st Cir. 1990) (following <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976) to construe pro se pleadings liberally in favor of the pro se party).  "The policy behind affording pro se plaintiffs liberal interpretation is that if they present sufficient facts, the court may intuit the correct cause of action, even if it was imperfectly pled."  <u>Ahmed v. Rosenblatt</u>, 118 F.3d 886, 890 (1st Cir. 1997), <u>cert. denied</u>, <u>Ahmed v. Greenwood</u>, 522 U.S. 1148 (1998).

4

At this preliminary stage of review, all factual assertions made by the plaintiff and inferences reasonably drawn therefrom must be accepted as true.  See Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir. 1996) (stating the "failure to state a claim" standard of review and explaining that all "well-pleaded factual averments," not bald assertions, must be accepted as true).  This review ensures that pro se pleadings are given fair and meaningful consideration.  See Eveland v. Dir. of C.I.A., 843 F.2d 46, 49 (1st Cir. 1988).

Discussion[3]

I.   Section 1983 Claims[4]

Section 1983 creates a cause of action against those who, acting under color of state law, violate federal constitutional

---

[3]Perfetto has alleged a variety of claims spanning a period of several years, many of which are factually distinct, and involve different legal theories and different defendants.  For the sake of clarity, I will include the relevant factual allegations for each claim with the discussion of that claim's legal merit, rather than setting out the factual allegations in a separate section.

[4]The claims as identified herein will be considered for all purposes to be the claims raised in the complaint.  If Perfetto disagrees with this identification of the claims, he must do so by proper objection to this Report and Recommendation or by properly moving to amend his complaint.

or statutory law.  <u>See</u> 42 U.S.C. § 1983[5]; <u>Parratt v. Taylor</u>, 451 U.S. 527, 535 (1981) (<u>overruled on other grounds by Daniels v. Williams</u>, 474 U.S. 327, 330-331 (1986)); <u>Wilson v. Town of Mendon</u>, 294 F.3d 1, 6 (1st Cir. 2002).  In order for a defendant to be held liable under § 1983, his or her conduct must have caused the alleged constitutional or statutory deprivation.  <u>See Monell v. Dep't of Soc. Servs.</u>, 436 U.S. 658, 692 (1978); <u>Soto v. Flores</u>, 103 F.3d 1056, 1061-62 (1st Cir.), <u>cert. denied</u>, 522 U.S. 819 (1997).

II.   <u>Conditions of Confinement</u>

   A.   <u>Factual Background</u>

      1.   <u>Deprivation of Clothing</u>

   Perfetto alleges that on August 1, 2003, defendants Charter and Moyer, as well as the entire second shift staff at the NHSP's Secure Housing Unit ("SHU") placed Perfetto in the SHU's dayroom

---

[5]42 U.S.C. § 1983 provides that:

> Every person who under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

to await open bed space.  Perfetto was directed by an unnamed
officer to remove all of his clothing except for his boxer
shorts.

### 2.   Deprivation of Sanitation and Hygiene

Perfetto further alleges that from May 15-17, 2004, he was
denied access to a toilet, a shower, toileting supplies, sanitary
housing conditions generally, clothing, linens, eating supplies,
and other necessary items by defendants Valente, Ash, Fidelli,
and a John Doe defendant.

Between May 2004 and August 2004, Perfetto alleges that he
asked defendant Valente, who was then under the supervision of
defendant Ash, if he could use the toilet.  Perfetto claims that
Valente denied Perfetto access to a toilet and instructed him to
defecate on the floor instead.  Further, Perfetto alleges that on
one occasion, defendant Charter forced Perfetto to roll on the
floor in his own urine.

### 3.   Deprivation of Food and Water

Perfetto alleges that on May 16, 2004 defendants Valente and
Washburn did not give him lunch.  Defendant Fidelli then ordered
Perfetto to bang his own head on the dayroom window in order to
get a lunch tray.  Perfetto further alleges that on July 15,

2004, he was denied lunch when Fidelli poured grape juice into his food.

Perfetto states that while he was housed in the SHU dayroom from May 15-17, 2004, and again from May 28-June 1, 2004, that the first shift staff at SHU refused to allow him to get a drink of water with either his medications or his meals.  Perfetto states that he was forced to drink his own urine to keep himself hydrated.

### 4.   Denial of Proper Classification and Housing

Perfetto alleges that from March 6-10, 2003, he was placed on a "precautionary watch" at the direction of Dr. Fellows because he was hoarding his medications.  Perfetto claims that his precautionary watch status should have resulted in his being placed in a cell, but that he was kept in the SHU dayroom during that time by defendants Washburn, Perron, Moyer, and the third shift officer in charge.  Perfetto further charges that from May 28 – June 1, 2004, he was housed in the SHU dayroom rather than in a cell by defendants Mosher and Washburn, although Perfetto does not State why he believes he was entitled to cell placement at that time.

Perfetto claims that on August 24, 2006, he was upgraded to
a higher security classification for a ninety day period.
Perfetto claims that defendants Mosher, Washburn and Moquin
denied him a reclassification board hearing for an additional
eighteen days beyond the ninety days.  During those eighteen
days, Perfetto received three disciplinary write-ups, two for the
destruction of State property for ripping his blanket, and one
for having coffee that didn't belong to him.  These write-ups
resulted in Perfetto being kept at the higher classification
level for an additional period of time.  Perfetto now alleges
that had he been returned to a lower security classification at
the end of ninety days, it is unlikely that he would have gotten
the disciplinary write-ups and the resulting increase in his
security classification.

     5.  <u>Failure to Protect</u>

Perfetto alleges that on August 1, 2003, he had been housed
in the Closed Custody Unit, but was placed into protective
custody and transferred to the SHU.  Perfetto states that his
safety was the responsibility of defendants Moyer, Bell, and
Washburn at that time.  However, between August 4, 2003 and
September 29, 2003, he was, on four separate occasions, housed in

a cell with a general population inmate, which jeopardized his
safety.

Perfetto states that defendants Flynn, Moquin, Gauthier, and
Parent were responsible for his safety and failed to protect him
on September 20, 2003, when he was moved to a tier where a "keep
away" inmate was also housed.

Perfetto alleges that on November 15, 2006, he and his
cellmate were engaged in a heated argument during which his
cellmate almost hit Perfetto, but did not.  Although this
occurred in full view of defendant Flynn, Flynn failed to move
Perfetto to a different cell.

    B.   <u>Legal Analysis</u>

        1.   <u>Eighth Amendment Claims</u>

To state a claim that the conditions of his incarceration
were in violation of the Eighth Amendment's guarantee against
cruel and unusual punishment, Perfetto must demonstrate that he
was subjected to conditions that resulted in a deprivation of his
right to humane treatment that was objectively serious, and that
the official who caused the deprivation was "deliberately
indifferent" to his needs.  <u>See</u> <u>Farmer v. Brennan</u>, 511 U.S. 825,
841 (1994) (citing <u>Canton v. Harris</u>, 489 U.S. 378, 390 (1989));

<u>Calderon-Ortiz v. Laboy-Alvarado</u>, 300 F.3d 60, 63-64 (1st Cir. 2002); <u>Giroux v. Somerset County</u>, 178 F.3d 28, 32 (1st Cir. 1999).  A challenged condition of confinement is objectively serious, standing alone or in combination with other conditions, if it deprives the inmate of an identifiable, human need.  <u>See</u> <u>Wilson v. Seiter</u>, 501 U.S. 294, 304 (1991).  A prison official is "deliberately indifferent" if he is "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," and also draws the inference.  <u>Farmer</u>, 511 U.S. at 837 (1994).  Thus, an Eighth Amendment claim arises only if an official inflicts "cruel and unusual punishment" by knowing of and disregarding "an excessive risk to inmate health or safety." <u>Id.</u> at 837, 838; <u>see</u> <u>Giroux</u>, 178 F.3d at 32 (explaining how the official must have "an actual, subjective appreciation of risk").

Here, Perfetto claims that the conditions of his confinement were at times so inhumane that the defendants responsible for his health violated his Eighth Amendment rights to be free of cruel and unusual punishment.  Perfetto first claims that he was forced to strip to his underwear on one occasion while housed in the dayroom at SHU.  Nothing in this allegation, which essentially alleges an uncomfortable situation, rises to the level of a

constitutional violation and I recommend that the claim based on the denial of clothing in the dayroom be dismissed.

Perfetto further claims that he was denied the use of a toilet, toilet supplies, or any access to hygiene equipment for the period between May 15 and May 17 in 2004. I find that the deprivation of access to a toilet and other supplies necessary to maintain minimally adequate hygiene for that three-day period states a violation of Perfetto's right not to be deprived of the basic necessities of civilized life, and in my Simultaneous Order, I will direct that this claim be served on defendants Valente, Ash, and Fidelli. Perfetto additionally alleges that Valente and Ash on one additional occasion denied him access to a toilet and directed him to defecate on the floor during the period between May and August of 2004. I find that this allegation, too, states a sufficiently serious and intentional deprivation of a basic human need to direct, in my Simultaneous Order, service of this claim against Valente and Ash. Similarly, Perfetto sufficiently alleges a denial of humane conditions of confinement claim against Charter for forcing Perfetto to roll on the floor in his own urine to allow that claim to proceed against Charter.

Perfetto's claims that he was deprived of lunch do not rise to the level of a constitutional violation.  While prison officials have an obligation to provide Perfetto with adequate nutrition and "the minimal civilized measure of life's necessities," Rhodes v. Chapman, 452 U.S. 337, 347 (1981), two missed lunches in a two month period do not suffice to state a denial of a need.  Accordingly, I recommend that the claims based on denial of food be dismissed.  Perfetto goes on to claim, however, that he was denied access to water to a sufficient degree that he was required to drink his own urine to keep himself adequately hydrated.  Such a claim does allege a denial of the minimal level of necessities the prison is obligated to provide.  Perfetto alleges that he was denied water by the first shift staff at SHU, but he has failed to name any individual defendant or defendants responsible for that violation. Therefore, as Perfetto has stated a claim upon which relief might be granted for a denial of water from May 15 through May 17, 2004 and again from May 28 through June 1, 2004, I will direct service of the claim against a John Doe defendant at this time.[6]

---

[6]If Perfetto wishes to pursue this claim against the currently unnamed officers, he will have to obtain the responsible officers' full name or names in discovery and appropriately move to amend the complaint.  To this end, upon

2.   <u>No Right to Particular Classification or Housing</u>

An inmate has no liberty interest in being housed or classified in a particular facility or in a particular security status.  <u>Meachum v. Fano</u>, 427 U.S. 215, 225 (1976); <u>Montanye v. Haymes</u>, 427 U.S. 236, 242 (1976) (discussing that the holding in <u>Meachum</u> dictates that "[a]s long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight.").  "[A]n increase in burdensome conditions does not in itself implicate the due process clause."  <u>Sisbarro v. Warden,</u>

---

service of this action on the named defendants, Perfetto can serve the named defendants with interrogatories to obtain the full names of the presently unnamed defendants pursuant to Fed. R. Civ. P. 33(a) which states in pertinent part:

> Without leave of court or written stipulation, any party may serve upon any other party written interrogatories, not exceeding 25 in number including all discrete subparts, to be answered by the party served or, if the party served is a public or private corporation or a partnership or association or governmental agency, by an officer or agent, who shall furnish such information as is available to the party.

Mass. State Penitentiary, 592 F.2d 1, 3 (1st Cir.), cert. denied,
444 U.S. 849 (1979) (citing Meachum, 427 U.S. at 224-25).  As
prison inmates do not have any liberty interest in where they are
housed, transfers within the prison are well within the
discretion of prison officials, and inmates are not protected
from such transfers by the constitution.  See Olim v. Wakinekona,
461 U.S. 238, 244-45 (1983) (citing Meachum, 427 U.S. at 224-25,
to support the conclusion that prisoners have no liberty interest
protecting them from housing transfers).  Accordingly, I
recommend that Perfetto's claims based on dayroom housing, delay
in reclassification, and an extension of time spent in a higher
security classification be dismissed as they fail to raise a
constitutional claim upon which relief might be granted.

    3.   Right to Protection from Other Inmates

    The safety and security of all prisoners is protected by the
Constitution.  See e.g., Youngberg v. Romeo, 457 U.S. 307, 315
(1982).  Perfetto alleges that on several occasions he was housed
with inmates who posed a potential risk to his safety.  To state
a claim upon which relief might be granted, Perfetto must allege
that the defendants were aware of and deliberately indifferent to
a serious risk to his safety at the hands of other inmates.  See

<u>Burrell v. Hampshire County</u>, 307 F.3d 1, 7 (1st Cir. 2002).

Here, Perfetto has alleged that he was a protective custody inmate who was subjected to a significant risk to his personal safety when he was housed with inmates in the general population, that he was housed near a specific inmate who posed a threat to him, and that he was kept in a cell with an inmate who posed a demonstrated physical threat to him.  Liberally construing these allegations, I find that Perfetto has alleged that the defendant officers knowingly placed Perfetto into situations that posed a significant potential risk to his safety and thereby failed to adequately protect him.  Accordingly, in my Simultaneous Order, I recommend that the claims alleging that Perfetto was placed in cells with general population inmates be served on defendants Moyer, Bell and Washburn, that the claim that Perfetto was housed on a tier with a "keep away" inmate be served on defendants Flynn, Moquin, Gauthier, and Parent, and that Perfetto's claim that he was left in a cell with a physically threatening inmate be served on defendant Flynn.

III. <u>Abuse by Prison Employees</u>

    A.   <u>Physical Abuse/Excessive Force</u>

        1.   <u>Factual Background</u>

Perfetto alleges that in July of 2004, defendant Charter directed another inmate, Timothy Wheeler, to "hose down" Perfetto as punishment for the crimes underlying Perfetto's incarceration, which Wheeler did.  Perfetto also alleges that on May 15, 2004, in the SHU dayroom, on two separate occasions, his face was slammed into the wall, first by defendant Fidelli and then by defendant Enmark.  Perfetto further states that defendant Leitner saw the assault by Enmark.

        2.   <u>Legal Analysis</u>

To state a claim for the use of excessive force by a prison official under the Eighth Amendment, an inmate must demonstrate "unnecessary and wanton infliction of pain."  <u>Whitley v. Albers</u>, 475 U.S. 312, 320 (1986).  The primary inquiry in determining whether prison officials used excessive physical force turns on "whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm," whether or not significant injury is evident.  <u>Hudson v. McMillian</u>, 503 U.S. 1, 6–8, 10 (1992) (citing <u>Whitley</u>, 475 U.S.

17

at 320-21).  "That is not to say that every malevolent touch by a
prison guard gives rise to a federal cause of action."  <u>Hudson v.</u>
<u>McMillian</u>, 503 U.S. at 9.  "Not every push or shove, even if it
may later seem unnecessary . . . violates a prisoner's
constitutional rights."  <u>Id.</u>  (internal citations omitted).  The
Eighth Amendment "excludes from constitutional recognition *de*
*minimis* uses of physical force, provided that the force is not of
a sort repugnant to the conscience of mankind."  <u>Id.</u> at 9-10
(quoting <u>Whitley</u>, 475 U.S. at 327 and <u>Estelle</u>, 429 U.S. at 106).

   In determining whether a plaintiff has stated a claim for
unconstitutionally excessive force, the court should look to the
following four factors: (1) "the need for application of force,"
(2) "the relationship between the need and the amount of force
that was used," (3) "the extent of injury inflicted," and (4)
"whether the force was applied in good faith to maintain or
restore discipline or maliciously and sadistically for the very
purpose of inflicting harm."  <u>Garcia v. City of Boston</u>, 115
F.Supp.2d 74, 81 (D. Mass. 2000), <u>aff'd</u>, 253 F.3d 147 (1st Cir.
2001).

   Applying the <u>Hudson v. McMillian</u> standard and the factors
set forth in <u>Garcia</u> to this case, I find that Perfetto alleges

that significant force or physical punishment was utilized against him when he was hosed down by Wheeler at Charter's direction, and also when his head was twice slammed into the wall on May 15, 2004.  Because I must liberally construe Perfetto's allegations in his favor, I find that Perfetto's claims include allegations that the force was unnecessary and in excess of what was reasonable in the situation, and that in each instance, was occasioned by the desire to maliciously and sadistically inflict pain rather than to achieve any penologically legitimate goal. Accordingly, in my Simultaneous Order, I will direct that claims of excessive force be served against defendants Charter, Wheeler, Fidelli, and Enmark.[7]

    B.   <u>Verbal Harassment/Inhumane Treatment</u>

    1.   <u>Factual Background</u>

Perfetto alleges that on July 1, 2003, defendant Isabelle asked him a number of humiliating questions, such as whether or not he harbored a sexual attraction for children, and called him a pedophile.  On September 11, 2003, Isabelle refused to let

---

[7]If Perfetto intended that Leitner be named as a defendant to this claim, I find he alleged only that Leitner witnessed a single assault by defendant Enmark, and not that Leitner undertook or omitted any action which resulted in injury to Perfetto.  Accordingly, I do not authorize service of this claim on Leitner.

Perfetto approach his cell door to get water to take with his medications because, according to Isabelle, Perfetto had an "ugly face."  Perfetto further alleges that on May 15-17, 2004, May 28-June 1, 2004, and June 30-August 5, 2004, he was verbally harassed by Charter, Isabelle and Valente, under the supervision of defendant Ash.  This harassment included a direction to Perfetto that he had to use the floor to defecate, and a threat that he would be beaten if he smeared his own waste on his body.

Perfetto similarly alleges that defendant Charter called Perfetto "skinner" and "diddler," which are slang terms for child molesters, repeatedly questioned Perfetto about his sexual preferences, on one occasion ordered Perfetto to sing "I'm A Little Teapot" in order to get a mattress, and once ordered Perfetto to dance.  The complaint is silent as to how Perfetto responded to these orders or the consequences of his response.

> 2.   Legal Analysis

Perfetto alleges that he was subject to a pattern of abuses that were designed to harass and torment him.  Perfetto does not identify any reason why the correctional staff might be particularly hostile to him.  In general, nonphysical abuse or harassment does not invoke constitutional protection.  See

Shabazz v. Cole, 69 F.Supp.2d 177, 198–201 (D.Mass. 1999) (citing authority to explain that racial slurs and verbal threats do not violate a prisoner's constitutional rights).  Even presuming that the facts Perfetto alleges are true, these assertions, while describing unprofessional and reprehensible conduct on the part of the offending officers, fail to establish behavior that is unconstitutional.  Accordingly, I recommend that the harassment claims be dismissed.

IV.  Inadequate Medical and Mental Health Care

    A.  Treatment for Medical and Mental Health Needs

        1.  Factual Background – Medical Claims

Perfetto alleges that between August 1, 2003 and October 11, 2003, he was repeatedly denied prescribed medication because the medications would be allowed to run out, even though he had submitted timely requests for refills.  Further, once he was able to have his medication reinstated, the date on the medication card would indicate that the medication had been withheld from him for two to five days after it had been received.  Perfetto names defendants Charter, Moyer, and the second shift Officer in Charge of SHU, as well as all of the second shift SHU staff to this claim.  Perfetto further alleges that on August 1, 2003, his

eyeglasses were taken from him by an unnamed officer at the SHU, and although he was told that the eyeglasses were lost, they were returned to him when he left the SHU on October 11, 2003.

On May 14, 2004, Perfetto alleges that his medications were dispensed to him twice by defendant Ismam, rather than once as prescribed, due to the fact that Ismam was unskilled in dispensing medication.  Perfetto further alleges that his Tegretol prescription was dispensed in double doses from July of 2004 through August 15, 2004, by members of the second shift SHU staff.

On May 15, 2004, Perfetto requested medical attention after having his head twice slammed into a wall by COs in the SHU dayroom.  He was denied medical attention by all of the NHSP medical staff as well as defendants Perron and Washburn.

On November 4–5, 2006, during medication call, defendant Flynn told Perfetto that his medication was not available.  On November 6, 2006, Perfetto saw Dr. Fellows who agreed to notify the pharmacy of the problem.  Perfetto received his Prozac that evening, but the card with it indicated that it had been sent on November 3.  Perfetto deduced that the second shift staff at SHU

had not given him his medication for the previous two days, although it had been received on the unit.

On December 17, 2006, Perfetto alleges that a John Doe CO lied and told Perfetto that his new card for Risperadol was not available.  When the third shift SHU staff made rounds, Perfetto asked CO Rose to see if the Risperadol had arrived.  Rose returned fifteen minutes later with Perfetto's medication.

2.   Factual Background – Mental Health Claims

Between May 28 and June 1, 2004, Perfetto alleges he was improperly housed in the SHU dayroom because defendants Washburn and Perron told him there was no cell space available.  Perfetto alleges that this housing placement was inappropriate because he was mentally ill.

On July 6, 2004, Perfetto asked for mental health attention because he was locked in a four foot by four foot bathroom for two hours.  Mental health attention was denied by all of the mental health staff at NHSP as well as defendants Perron and Washburn.

On November 28, 2006, Perfetto alleges that he was abusively locked in the shower room on his unit for requesting a shower. For two days, when Dr. Fellows made his rounds, Perfetto asked to

see Fellows privately regarding the alleged abuse.  Fellows did not see Perfetto until November 30, 2006.

     3.  <u>Legal Analysis</u>

Claims of inadequate medical or mental heath care in the prison context arise under the Eighth Amendment, which protects prison inmates from prison officials acting with deliberate indifference to their serious medical needs.  <u>See</u> <u>Farmer</u>, 511 U.S. at 831.  To assert a viable cause of action for inadequate medical care, an inmate must first state facts sufficient to allege that the plaintiff had a serious medical need for which adequate care was not provided.  <u>Farmer</u>, 511 U.S. at 832; <u>Rhodes</u>, 452 U.S. 347; <u>Estelle</u>, 429 U.S. at 106.  The inmate must then allege that a responsible prison official was aware of the need or of the facts from which the need could be inferred, and still failed to provide treatment.  <u>Estelle</u>, 429 U.S. at 106.  A serious medical need is one that involves a substantial risk of serious harm if it is not adequately treated.  <u>Barrett v. Coplan</u>, 292 F.Supp.2d 281, 285 (D.N.H. 2003); <u>Kosilek v. Maloney</u>, 221 F.Supp.2d 156, 180 (D. Mass. 2002) (citing <u>Farmer</u>, 511 U.S. at 835–47); <u>see</u> <u>also</u> <u>Gaudreault v. Mun'y of Salem, Mass.</u>, 923 F.2d 203, 208 (1st Cir. 1990), <u>cert. denied</u>, 500 U.S. 956 (1991)

(defining a serious medical need as one "that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."). The Eighth Amendment applies to a prison's administration of medical care, including mental health care. See DesRosiers v. Moran, 949 F.2d 15, 19 (1st Cir. 1991); Torraco v. Maloney, 923 F.2d 231, 234 (1st Cir. 1991) (recognizing deliberate indifference to an inmate's mental health needs violates the Eighth Amendment).

"Adequate medical care" is treatment by qualified medical personnel who provide services that are based on medical considerations and are of a quality acceptable to the prudent professional standards in the community, tailored to an inmate's particular medical needs. United States v. DeCologero, 821 F.2d 39, 42–43 (1st Cir. 1987). This does not mean that an inmate is entitled to the care of his or her choice, simply that the care must meet minimal standards of adequacy. Deliberate indifference may be found where the medical care provided is "so clearly inadequate as to amount to a refusal to provide essential care." Torraco, 923 F.2d at 234. Constraints inherent in a prison setting may affect the choice of care provided, and may be

25

relevant to whether or not prison officials provided inadequate care with a deliberately indifferent mental state.  Wilson, 501 U.S. at 302.

Here, Perfetto has alleged that he was denied his prescribed medication, or denied the proper dosage of his prescribed medication, by Charter, Moyer and the second shift staff at SHU between August 1, 2003 and October 11, 2003, by Ismam on May 14, 2004, by the second shift staff at SHU between July 2004 and August 15, 2004, and on November 4-5, 2006 by defendant Flynn and the second shift staff at SHU.  Perfetto also alleges that he was denied his eyeglasses by the officer in charge at SHU on August 1, 2003, for a period of two and a half months.[8]  A prescription medication is, by definition, medical treatment that has been deemed necessary by a medical professional.  I find, therefore, that intentionally withholding Perfetto's medication or delaying Perfetto's receipt of the medication is actionable under § 1983.  Accordingly, I find that Perfetto has stated claims against Charter, Mayer, Ismam, and Flynn for denying him prescribed

---

[8]Perfetto's claim that he was told his Risperadol was not in, but was later given the medication, does not allege that he was denied proper medication or proper medical care.  Accordingly, the allegations related to Risperadol will not be considered as part of the inadequate medical care claim in this action.

medication.  While Perfetto has also alleged that other SHU
officers were involved in the denial of adequate medical care, he
has failed to name any other individual officers to this action.
As explained earlier, however, Perfetto is free to obtain the
names of these individuals through the discovery process and move
to amend his complaint to add additional defendants when he is
able to identify them by name.

An allegation of inadequate vision care can support a valid
§ 1983 action challenging the improper denial of medical care.
See Koehl v. Dalsheim, 85 F.3d 86, 88 (2d Cir. 1996).  Perfetto
claims that he was deprived of his eyeglasses by the officer in
charge of SHU on August 1, 2003.  I find that while Perfetto has
alleged sufficient facts to state a cause of action for the
denial of his eyeglasses, I can only direct this claim to proceed
against a John Doe defendant until the responsible officer is
identified and Perfetto amends his complaint to add the officer
as a defendant.

Perfetto also claims that his Eighth Amendment rights were
violated when he was refused immediate medical or mental health
attention on May 15, 2004, July 6, 2004, and November 28-29,
2006, and when he was denied a cell between May 28 and June 1,

27

2004.  I find that for these claims Perfetto has not stated facts sufficient to allow me to determine that any serious medical or mental health need was present and was known to the defendants but denied.  Accordingly, I recommend that those claims be dismissed from this action.

      B.   <u>Denial of Rehabilitative Programming</u>

          1.   <u>Factual Background</u>

    In December of 2002, Perfetto was selected to begin the sexual offender treatment program ("SOP") in January of 2003. One week later, Perfetto received a letter from then SOP Director McCormack indicating he was going to be discharged from the program for receiving two write-ups during that week.  The letter further advised Perfetto that if he remained disciplinary free, he could reapply to the SOP after ninety days.[9]  In September of 2003, Perfetto reapplied to the SOP and was permitted to join the program on November 30, 2003.

    Perfetto was discharged from the program on April 2, 2004 for engaging in sexually aggressive behavior.  Perfetto was

---

    [9]In support of his claim that he was improperly denied access to the SOP, Perfetto alleges that the SOP is the only program at the NHSP which requires that an inmate be disciplinary free before enrollment is allowed.  Whether or not that is true, it is immaterial to my consideration of this claim.

permitted to apply for re-entry to the program, however, if he remained disciplinary free for ninety days.  In September of 2004, Perfetto did reapply to the SOP and was readmitted in August of 2005.  However, on November 17, 2005, Perfetto was permanently terminated from the SOP for violating his behavior contract.  Since May of 2006, Perfetto alleges that he has been trying to get onto the waiting list for the SOP but he his requests have been denied.

        2.    <u>Legal Analysis</u>

As Perfetto has not alleged that the denial of access to the SOP has resulted in a denial of necessary care and treatment for a serious health need, it appears that he is attempting to allege a violation of a right to rehabilitative programming.  Inmates, however have no constitutional right to participate in a rehabilitation program.  <u>See</u> <u>Moody v. Daggett</u>, 429 U.S. 78, 88 n.9 (1976) (inmate has no constitutional entitlement to rehabilitative programming sufficient to invoke due process when decision regarding eligibility for program is discretionary with prison officials).  Accordingly, I find that Perfetto cannot state a § 1983 claim for the denial of rehabilitative programming such as the SOP and I recommend this claim be dismissed.

29

V.   <u>First Amendment Claims</u>

A.   <u>Denial of the Right to Petition the Government for a Redress of Grievances</u>

1.   <u>Factual Background</u>

Perfetto states that during his incarceration, he has engaged in adversarial proceedings in both the prison's administrative grievance system and in the courts against defendants Cattell, Wrenn, Bilodeau, McGrath, O'Brien, Michaud, Brown, and Marsh.  As a result, he states that he has been retaliated against in a number of ways.  Perfetto states that defendant Bilodeau issued written threats to Perfetto and wrongfully intercepted a request Perfetto filed on August 10, 2006.  Further, Perfetto alleges that he received an unspecified unprofessional response from defendants McGrath and Marsh to a grievance he filed on July 20, 2006,[10] and that he was denied access to grievance forms and request slips.

_____

[10]It may well be that the "unprofessional response" referred to by Perfetto, once the details of that response are established, is insufficient to constitute an adverse action, a necessary element in a retaliation claim.  For purposes of preliminary review, however, I afford the allegations liberal construction and find that Perfetto has stated the minimum facts necessary to allege a claim against McGrath and Marsh upon which relief might be granted.

On August 7 and 8, 2006, in what Perfetto alleges were retaliatory acts, defendant Michaud singled out Perfetto for a cell search.  There was no witness to the search, which Perfetto states is against NHSP policy.  On August 7, Michaud took three magazines and a book, and on August 8 he took Perfetto's typewriter, returning it two days later without its ribbon.  On August 10, 2006, defendants O'Brien and Brown singled Perfetto's cell out to search, leaving Perfetto's things in such disarray that Perfetto claims he became suicidal.  Perfetto further alleges that O'Brien and Brown took his religious materials and legal documents and destroyed them.  Then, on August 14, 2006, Perfetto was again singled out by defendant Brown for another cell search.  Brown took two newspapers from the cell that were not marked with Perfetto's name.

Perfetto alleges that when his legal documents were destroyed on August 10, 2006, he was put at a severe disadvantage in preparing a complaint he was working on.  Further, he states that he was chilled in his pursuit of judicial and administrative remedies by the retaliation, which resulted in a denial of access to those avenues of recourse.

Perfetto also alleges that from July 1, 2004 through August 5, 2004, prior to the acts of retaliation, and while he was housed at the SHU, he was denied request slips, grievance forms, pens and pencils by defendants Charter, Edsil, Isabelle, and a John Doe officer.  He also states that during this period, request slips were only made available to him two or three times a week, rather than every day.

     2.  <u>Legal Analysis</u>

The First Amendment's guarantee of a right to petition the government for a redress of grievances has been characterized as "among the most precious of the liberties safeguarded by the Bill of Rights."  <u>United Mine Workers v. Ill. State Bar Ass'n</u>, 389 U.S. 217, 222 (1967).  The right of petition, in the prison context, means that inmates must be "permit[ted] free and uninhibited access . . . to both administrative and judicial forums for the purpose of seeking redress of grievances against state officers."  <u>Sostre v. McGinnis</u>, 442 F.2d 178, 200 (2d Cir. 1971) (en banc), <u>cert. denied</u>, <u>Sostre v. Oswald</u>, 404 U.S. 1049 and <u>Oswald v. Sostre</u>, 405 U.S. 978 (1972) (<u>overruled on other grounds by</u> <u>Davidson v. Scully</u>, 114 F.3d 12 (2d Cir. 1999).  "[I]ntentional obstruction of a prisoner's right to seek redress

32

of grievances is precisely the sort of oppression that . . .
section 1983 [is] intended to remedy." <u>Franco v. Kelly</u>, 854 F.2d
584, 588 (2d Cir. 1988) (internal quotations omitted).

The Constitution further guarantees a right of access to the
courts. <u>Bounds v. Smith</u>, 430 U.S. 817, 828 (1977). This right
is derived from a number of sources, including the First
Amendment, the Due Process Clause, and the Privileges and
Immunities Clause of the Constitution. <u>See</u> <u>Simmons v. Dickhaut</u>,
804 F.2d 182, 183 (1st Cir. 1986) (collecting cases). Although
prisoners are not granted all of the constitutional rights
guaranteed to nonincarcerated people, they maintain a
constitutional right of access to the courts that affords them
access to the tools necessary to challenge their criminal cases,
criminal convictions and sentences directly or collaterally, to
file habeas petitions, or to challenge the conditions of their
confinement through civil rights actions. <u>See</u> <u>Lewis v. Casey</u>,
518 U.S. 343, 354–55 (1996).

In order to state a claim for denial of access to the
courts, a prisoner must "demonstrate that the alleged
shortcomings in the library or legal assistance program hindered
his efforts to pursue a legal claim." <u>Lewis</u>, 518 U.S. at 351.

Therefore, a prisoner seeking relief under § 1983 for such a violation must allege that the denial of access to legal materials has hampered his ability to assert an actual legal claim that he is constitutionally entitled to pursue during his incarceration.  <u>Id.</u>

A prisoner's right to petition the government for a redress of grievances under the First Amendment precludes prison officials from retaliating against a prisoner by punishing a prisoner for actions he takes in the exercise of those rights. <u>See</u> <u>Bradley v. Hall</u>, 64 F.3d 1276, 1279 (9th Cir. 1995).  While prison officials may make policy that is reasonably related to legitimate penological interests, even at the expense of certain constitutional rights, <u>Turner v. Safley</u>, 482 U.S. 78, 89-90 (1987), "actions otherwise supportable lose their legitimacy if designed to punish or deter an exercise of constitutional freedoms." <u>Ferranti v. Moran</u>, 618 F.2d 888, 892 n.4 (1st Cir. 1980) (citing <u>McDonald v. Hall</u>, 610 F.2d 16, 18 (1st Cir,. 1979)); <u>see</u> <u>also</u> <u>Goff v. Burton</u>, 7 F.3d 734, 738 (8th Cir. 1993), <u>cert. denied</u>, 512 U.S. 1209 (1994) (prison officials cannot lawfully impose a disciplinary sanction against a prisoner in retaliation for the prisoner's exercise of his constitutional

34

right).  Retaliation can be inferred from the chronology of

events.  See Ferranti, 618 F.2d at 892 (chronology of events

provided support for inference of retaliation);  McDonald, 610

F.2d at 18 (same).

Perfetto alleges that defendants Bilodeau, McGrath, O'Brien,

Michaud, Brown, and Marsh all took actions against Perfetto in

retaliation for his filing of a grievance on July 20, 2006, and

other litigation that he was preparing.  As a result, in the

several weeks and months following, these defendants searched

Perfetto's cell, seized his property, threatened him, and denied

him access to grievance forms and request slips.  While none of

these actions, standing alone, would necessarily give rise to a

constitutional claim, for purposes of preliminary review, I find

that the chronology and substance of events alleged by Perfetto

suffice to state a claim for retaliation; and I will direct in my

Simultaneous Order that this claim proceed against defendants

Bilodeau, McGrath, O'Brien, Michaud, Brown, and Marsh.  Perfetto

has also named Cattell and Wrenn as defendants to this claim, but

has not alleged any facts that indicate that either one of them

was directly or indirectly involved in the retaliation Perfetto

35

describes.  Accordingly, I will not direct that they be served
with this claim.

Perfetto alleges further that defendants O'Brien and Brown,
by destroying his legal documents, interfered with the
preparation of a civil rights lawsuit.  Although the claim is not
detailed, I find that it states sufficient facts to state a claim
for denial of access to the courts, and I will direct in my
Simultaneous Order that the claim be served on O'Brien and Brown.

Perfetto also alleges that he was denied access to grievance
procedures because he was at times limited in his access to the
appropriate forms, and at times he was denied the forms
altogether, by defendants Charter, Edsil, Isabelle, and Doe.  I
find that to the extent he was denied access to the prison's
grievance procedures, he has stated a claim for a denial of the
right to petition the government for a redress of grievances
against Charter, Edsil, and Isabelle.  Perfetto will have to
identify the John Doe defendant to this claim during the
discovery process and move to amend his complaint if he wishes to
add that individual to this action as a defendant.

B.    Denial of Religious Practice

       1.    Factual Background

Perfetto alleges that on May 15, 2004, in the SHU dayroom,
defendant Fidelli asked Perfetto to remove his crucifix.
Perfetto states he was unable to remove it due to the effects of
his medication.  Perfetto claims that Fidelli then ripped the
crucifix off of Perfetto's neck.

       Perfetto states that from June 28 through August 5, 2004, he
was denied clergy visits by a John Doe visitations officer.

       Perfetto states that he was denied personal religious
materials in SHU by a John Doe officer.

       Perfetto states that on August 5, 2006, defendant Mallette
denied him a pass to a Jehovah's Witness study group.

       2.    Legal Analysis

The First Amendment's religion clauses provide that
"Congress shall make no law respecting an establishment of
religion, or prohibiting the free exercise thereof."  The first
clause, the Establishment Clause, mandates the separation of
church and state.  The second clause, the Free Exercise Clause,
requires that government respect and not interfere with the
religious beliefs and practices of those protected by the United

States Constitution.  See Cutter v. Wilkinson, 544 U.S. 709, 719 (2005).

A prisoner "retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." Pell v. Procunier, 417 U.S. 817, 822 (1974); see also, Bell v. Wolfish, 441 U.S. 520, 545 (1979) ("prisoners do not forfeit all constitutional protections by reason of their conviction and confinement in prison.").  The retained rights include the right to the free exercise of religion.  Cruz v. Beto, 405 U.S. 319, 322 (1972).  Prisons must provide all inmates reasonable opportunities to exercise their religious freedom.  Id. at 322, n.2.  When a prisoner raises a Free Exercise Clause claim, the prisoner must "establish that a challenged policy restricts the inmate's free exercise of a sincerely held religious brief." Brown-El v. Harris, 26 F.3d 68, 69 (8th Cir. 1994); Barnett v. Comm'r, N.H. Dep't of Corr., No. Civ. 98-305-JD, 2000 WL 1499490 at *2 (D.N.H. Apr. 26, 2000).

The Supreme Court has held that a prisoner's sincerely held religious beliefs must yield, however, if contrary to prison regulations that are "reasonably related to legitimate

penological interests." <u>Turner</u>, 482 U.S. at 89; <u>see</u>, <u>O'Lone v.</u>
<u>Estate of Shabazz</u>, 482 U.S. 342, 351-352 (1987) (finding that the
Constitution does not require the prison to sacrifice legitimate
penological objectives to satisfy an inmate's desire to exercise
his religion so long as an inmate is not deprived of all forms of
religious exercise).  A prison regulation must have a logical
connection to the legitimate governmental interests invoked to
justify it.  <u>Turner</u>, 482 U.S. at 89-90.  That connection may not
be "so remote as to render the policy arbitrary or irrational."
<u>Id.</u>

    Perfetto's allegation that he has been denied the free
exercise of religion amounts to an assertion that he was not
permitted some unspecified materials, that he was denied visits
for a limited period of time from non-prison clergy, that a
crucifix was removed from him, and that he was not permitted to
attend a single religious study group.  These allegations, even
if considered in the aggregate, are insufficient to amount to a
deprivation of Perfetto's right to practice his religion and to
adhere to his sincere religious beliefs.  Accordingly, I
recommend that the claim alleging a denial of the free exercise
of religion be dismissed.

VI.   <u>Property Claims</u>

    A.   <u>Factual Background</u>

A number of Perfetto's claims allege that one or more of the defendants have damaged, lost, or improperly seized his property, including personal property and papers, legal documents, eyeglasses and a crucifix necklace.  Perfetto also alleges that his property was, on several occasions, improperly inventoried in violation of NHSP policy.

    B.   <u>Legal Analysis</u>

Claims alleging the theft, damage, loss or other misappropriation of property are not actionable under 42 U.S.C. § 1983 where, as here, the state has an adequate post-deprivation remedy available.  <u>Hudson v. Palmer</u>, 468 U.S. 517, 533 (1984); <u>see</u> N.H. Rev. Stat. Ann. 541-B:9(II) & (IV), and 541-B:14 (1997) (providing a post-deprivation means of recouping property loss attributable the State).  Therefore, I recommend all of Perfetto's explicit or intended property claims be dismissed from this action.

VII. <u>Choice of Defendants</u>

    A.   <u>Official Capacity Claims</u>

    Section § 1983 authorizes suits against state actors operating to deprive citizens of their constitutional rights. Because I have found that Perfetto has alleged constitutional violations against a number of NHSP employees sufficient to state a cause of action under § 1983, those individuals –– defendants Bilodeau, McGrath, O'Brien, Michaud, Brown, Marsh, Charter, Fidelli, Enmark, Valente, Ash, Washburn, Edsil, Ismam, Isabelle, Bell, Moyer, Flynn, Moquin, Gauthier, and Parent –– will be defendants to this suit in their individual capacities.

    Perfetto also sued the defendants in their official capacities. It is well-settled that the Eleventh Amendment bars suits against state entities and state agents working in their official capacities unless the state has expressly waived immunity, which has not been done by New Hampshire for actions brought under § 1983. <u>See</u> <u>P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.</u>, 506 U.S. 139, 144 (1993) (absent waiver, neither a State nor agencies acting under its control may be subject to suit in federal court); <u>Will v. Mich. Dep't of State Police</u>, 491 U.S. 58, 71 (1989) (holding that neither a state nor its

officials acting in their official capacities are "persons" under
§ 1983).  Official capacity suits against officers of an agency
are simply "another way of pleading an action against an entity
of which an officer is an agent."  Monell, 436 U.S. at 690 n.55.
Accordingly, I recommend dismissal of all of the official
capacity claims against the defendants to this action.

    B.  Supervisory Liability

Perfetto has named defendant Ash as a defendant to this suit
in his supervisory capacity.  "Supervisory liability under § 1983
cannot be predicated on a *respondeat* theory, but only on the
basis of the supervisor's own acts or omissions."  Aponte Matos
v. Toledo Davila, 135 F.3d 182, 192 (1st Cir. 1998) (internal
citations omitted).  A supervisor must be either "a primary actor
involved in, or a prime mover behind, the underlying violation."
Camilo-Robles v. Zapata, 175 F.3d 41, 43-44 (1999).  There must
be "an affirmative link, whether through direct participation or
through conduct that amounts to condonation or tacit
authorization" to the violation alleged.  Id. at 44.  Here,
Perfetto's claims suffice to allege that Ash was aware of the
denial of access to a toilet which Perfetto alleges occurred
between May and August of 2004, and that, as a supervising

42

officer, Ash had the authority and ability to remedy the situation and failed to do so.  Accordingly, I find that Perfetto has stated sufficient facts to allow a claim for supervisory liability to proceed against Ash.

     C.   <u>Defendants Against Whom No Claim is Alleged</u>

Perfetto also has named the following individuals as defendants to this action:  Cattell, Wrenn, Coplan, Cunningham, Curry, Leitner, Perron, Mosher, Provencer, Mallette, Fellows, and Desmond.  I find that Perfetto has not stated any claims against these individuals upon which relief might be granted and, therefore, I recommend they be dismissed from this action.

     D.   <u>Inmate Timothy Wheeler</u>

In addition to the NHSP employees, Perfetto has named an inmate, Timothy Wheeler, to this action for his part in turning a hose on Perfetto as punishment.  Ordinarily, a prison inmate who engages in assaultive behavior on another inmate would be considered a private actor and would not be liable under § 1983, which creates a cause of action for unconstitutional behavior only when it is committed under color of state law.  <u>See</u> 42 U.S.C. § 1983; <u>Estades–Negroni v. CPC Hosp. San Juan Capestrano</u>, 412 F.3d 1, 4 (1st Cir. 2005).  "It is only in rare circumstances

43

that private parties can be viewed as state actors."  Id.
(internal citations omitted).  This Circuit has utilized three
tests to determine whether a private party can fairly be
characterized as a state actor: the state compulsion test, the
nexus/joint action test, and the public function test:

> Under the state compulsion test, a private party
> is fairly characterized as a state actor when the
> state has exercised coercive power or has provided
> such significant encouragement, either overt or
> covert, that the [challenged conduct] must in law
> be deemed to be that of the State.  The nexus/
> joint action test provides that a private party
> can be held to be a state actor where an
> examination of the totality of the circumstances
> reveals that the state has so far insinuated
> itself into a position of interdependence with the
> [private party] that it was a joint participant in
> [the challenged activity].  And, in accordance
> with the public function test, a private party is
> viewed as a state actor if the plaintiff
> establishes that, in engaging in the challenged
> conduct, the private party performed a public
> function that has been traditionally the exclusive
> prerogative of the State.

Id. at 5 (citing, *inter alia*, Blum v. Yaretsky, 457 U.S. 991,
1004, 1005 (1982)).

Here, the facts alleged by Perfetto are sufficient to
satisfy both the state compulsion and the public function test.
Perfetto alleges that defendant Charter directed Wheeler to spray
Perfetto with a hose.  It is reasonable to infer that, for an

44

inmate, a direct order from a corrections officer constitutes the exercise of coercive power.  Further, the act of punishing those convicted of crimes for their crimes is a public function that traditionally has been the "exclusive prerogative" of the state. Accordingly, Perfetto has alleged sufficient facts to proceed against Wheeler as a state actor amenable to suit under § 1983.

VIII.     Motion to Appoint Counsel

Perfetto has requested that the Court appoint counsel in this matter.  Perfetto alleges that he is not knowledgeable in the law and has a mental illness that periodically prevents him from functioning.

There is no absolute constitutional right to free legal representation in a civil case.  Bemis v. Kelley, 857 F.2d 14, 15 (1st Cir. 1988).  Rather, appointment of counsel in a civil case is left to the discretion of the court.  See 28 U.S.C. § 1915(d). An indigent litigant must demonstrate that exceptional circumstances exist to justify appointment of counsel, such that without counsel the litigant most likely would be unable to obtain due process of the law.  DesRosiers, 949 F.2d at 23; Cookish v. Cunningham, 787 F.2d 1, 2 (1st Cir. 1986) (*per curiam*).  In the case at hand, Perfetto has failed to establish

the existence of such circumstances at this time.  Perfetto's motion for counsel is therefore denied without prejudice to refiling in the future should circumstances warrant.

### Conclusion

For the foregoing reasons, I recommend that the official capacity claims, the claims alleging denial of clothing, denial of food, denial of appropriate housing, denial of lower security classification, verbal harassment, denial of adequate mental health care, denial of rehabilitative programming, denial of religious practice, denial of personal property, and named defendants Cattell, Wrenn, Coplan, Cunningham, Curry, Leitner, Perron, Mosher, Provencer, Mallette, Fellows, and Desmond be dismissed from this action.  In the Simultaneous Order I direct service of the unsanitary conditions, denial of water, failure to protect, excessive force, inadequate medical care, retaliation, denial of access to the courts, and the denial of the right to petition the government for a redress of grievances claims against the properly named defendants to those claims, as described herein.

Any objections to this report and recommendation must be filed within ten (10) days of receipt of this notice.  Failure to

file objections within the specified time waives the right to

appeal the district court's order.  See Unauthorized Practice of

Law Comm. v. Gordon, 979 F.2d 11, 13-14 (1st Cir. 1992);

United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986).

James R. Muirhead
United States Magistrate Judge

Date:     February 23, 2007

cc:       Jonathan Andrew Perfetto, pro se

47