UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

Jonathan Andrew Perfetto

v.                              Civil No. 06-307-JL
                                Opinion No. 2008 DNH 077
New Hampshire State Prison,
Warden et al.[1]


**MEMORANDUM AND ORDER**


Plaintiff Jonathan Andrew Perfetto, a New Hampshire State

Prison (NHSP) inmate, seeks injunctive relief and damages under

42 U.S.C. § 1983 for a variety of alleged civil rights violations

relating to his incarceration.

"Federal courts are courts of limited jurisdiction.  They

possess only that power authorized by Constitution and statute .

. . ."  United States v. Coloian, 480 F.3d 47, 50 (1st Cir. 2007)

---

[1]  The following NHSP employees comprise the defendants in
this case:  Unit Manager Lucy Bilodeau, Unit Manager Tim Moquin,
Unit Manager Matthew Moyer, Counselor Robert McGrath, Cpl. First
Name Unknown (FNU) Brown, Lt. FNU Gauthier, Lt. Joe Michaud, Sgt.
FNU O'Brien, Sgt. FNU Parent, Corrections Officers FNU Ash, FNU
Bell, FNU Charter, FNU Edsall, FNU Edmark, FNU Fedele, FNU Flynn,
FNU Isabelle, FNU Iseman, FNU Valenti, and FNU Washburn, as well
as inmate Timothy Wheeler and several "John Doe" defendants.

A June 20, 2007 order of this court, adopting Magistrate
Judge Muirhead's Report and Recommendation, dismissed the case
against additional defendants Cattell, Wrenn, Coplan, Cunningham,
Curry, Leitner, Perron, Mosher, Provencher, Mallette, Fellows,
and Desmond.

(quoting <u>Kokkonen v. Guardian Life Ins. Co. of America</u>, 511 U.S. 375, 377 (1994)).  Jurisdiction over this case, uncontested by the defendants, arises under 28 U.S.C. §§ 1331 (federal question) and 1343 (civil rights).

The defendants have moved for summary judgment under Fed. R. Civ. P. 56, arguing that the plaintiff failed to exhaust the administrative remedies available to him as required by the Prisoner Litigation Reform Act, 42 U.S.C. § 1997e (PLRA), prior to bringing this action.

The court heard oral argument on April 2, 2008.[2]  For the reasons set forth below, the court finds and rules that Perfetto did not exhaust the administrative remedies available to him and therefore grants summary judgment in favor of the defendants.

**APPLICABLE LEGAL STANDARD**

Under Fed. R. Civ. P. 56(c), a motion for summary judgment will be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment

---

[2]  The hearing was conducted via video-conference with the petitioner at the N.H. State Prison facility in Berlin, pursuant to Local Rule 83.7(c).

2

as a matter of law." <u>See</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247 (1986); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).  To defeat a motion for summary judgment, "the non-moving party must set forth specific facts showing that a genuine issue of material fact exists as to each issue upon which she would bear the ultimate burden of proof at trial." <u>Torres-Negron v. Merck & Co.</u>, 488 F.3d 34, 39 (1st Cir. 2007) (internal quotation marks omitted).  In this context, a "fact is 'material' if it potentially affects the outcome of the suit . . . and a dispute over it is 'genuine' if the parties' positions on the issue are supported by conflicting evidence." <u>Intern'l Ass'n of Machinists & Aero. Workers v. Winship Green Nursing Ctr.</u>, 103 F.3d 196, 199-200 (1st Cir. 1996); <u>see</u> <u>also</u> <u>Navarro v. Pfizer Corp.</u>, 261 F.3d 90, 93-94 (1st Cir. 2001).  In deciding whether summary judgment is proper, the court must view the entire record in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor.  <u>Zyla v. Wadsworth</u>, 360 F.3d 243, 246 (1st Cir. 2004).

**ANALYSIS**

The opening provision of the PLRA sets forth its "invigorated"[3] administrative exhaustion requirement.  Because the main purpose of PLRA (itself a group of amendments to the Civil Rights of Institutionalized Persons Act (CRIPA)) is "to reduce the quantity and improve the quality of prisoner suits,"[4] the exhaustion requirement has been described by the Supreme Court as the PLRA's "centerpiece."  Woodford v. Ngo, 548 U.S. 81, __, 126 S. Ct. 2378, 2382 (2006).  It provides:

> **(a) Applicability of Administrative Remedies.**
> No action shall be brought with respect to prison conditions under §1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).  The PLRA requires prisoners asserting a claim under 42 U.S.C. § 1983 to exhaust administrative remedies before--literally, as a condition precedent to--putting the claims into suit.  As the Supreme Court noted in Porter, "[a]ll available remedies must now be exhausted; those remedies need not meet federal standards, nor must they be plain, speedy and effective."  534 U.S. at 524 (internal quotation marks omitted).

---

[3] Porter v. Nussle, 534 U.S. 516, 524 (2002).

[4] Id.

4

Specifically, what "the PLRA exhaustion requirement requires" of prisoners is "proper exhaustion." Woodford, 126 S. Ct. at 2387. The doctrine of proper exhaustion provides: "As a general rule . . . courts should not topple over administrative decisions unless the administrative body not only has erred, but has erred against objection made at the time appropriate under its practice." Id. at 2385 (internal bracketing omitted) (quoting United States v. L.A. Tucker Truck Lines, 344 U.S. 33, 37 (1952)). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Id. at 2386 (footnote omitted). In order to fully and properly exhaust all available remedies, "a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." Acosta v. U.S. Marshals Serv., 445 F.3d 509, 512 (1st Cir. 2006) (quoting Pozo v. McCaughtry, 286 F.3d 1022, 1025 (7th Cir. 2002)). Conversely, proper exhaustion cannot be achieved "by filing an untimely or otherwise procedurally defective administrative grievance or appeal." Woodford, 126 S. Ct. at 2382; see also Brewer v. Mullin, 130 Fed. Appx. 264, 265-66 (10th Cir. 2005) (skipping steps in the prison's grievance procedure constitutes failure to exhaust).

"[T]here is no 'futility exception' to the PLRA exhaustion requirement."  Medina-Claudio v. Rodriquez-Mateo, 292 F.3d 31, 35 (1st Cir. 2002).  In other words, even if the prison's administrative process does not provide for the type of relief the inmate desires, the prisoner must complete any prison administrative process capable of addressing the inmate's complaint and providing some form of relief.  Booth v. Churner, 532 U.S. 731, 739 (2001).  Thus "a prisoner must now exhaust administrative remedies even where the relief sought--monetary damages--cannot be granted by the administrative process."  Woodford, 126 S. Ct. at 2382-83 (citing Booth, 532 U.S. at 734).

**BACKGROUND**[5]

The Department of Corrections has promulgated administrative remedies in the form of a formal grievance procedure for dealing with inmates' complaints.  The grievance, procedure entitled New Hampshire Department of Corrections Policy and Procedure Directive (PPD) 1.16, is set forth in the New Hampshire State Prison Inmate Manual.  As Perfetto admitted at oral argument, this manual is provided to all inmates upon admission to the

---

[5]  The court finds all facts, and draws all factual inferences, in the light most favorable to the plaintiff.  Zyla, 360 F.3d at 246.

6

facility, was in fact provided to him, and is available in the prison library.

PPD 1.16 requires an inmate make an initial attempt--albeit an informal one--to resolve any issue with the staff member involved.  If that fails, a three-level grievance procedure is set in motion with the filing of a written complaint--known as an inmate request slip (IRS)--with the lowest level staff member authorized to deal with the issue in question.[6]  The IRS must be filed within 30 days of the underlying incident or it will be rejected as untimely.  Once filed, prison officials are required to conduct an appropriate investigation of the issues raised and provide a written response to the inmate within 15 days.

At the second level, an inmate dissatisfied with the prison's response may pursue further administrative remedies by submitting a "grievance form" to the Warden.  The inmate is afforded 30 days from the receipt of the response to appeal to

_____

[6]  "There is an exception to the 'chain of command' rule when the inmate believes that he or she is subject to imminent injury or harm.  Under those circumstances, the inmate may directly address the Warden or the Commissioner of Corrections, even if the inmate has not previously filed an inmate request slip.  See [PPD 1.16(IV)(A)(4)]; Inmate Manual, § D(3)."  LaFauci v. N.H. Dept. of Corr., 2001 DNH 204, 2001 WL 1570932, at *7 (D.N.H. Oct. 31, 2001).  A grievance filed directly with the Warden or Commissioner must still be filed within 30 days of the complained of incident.  PPD 1.16(IV)(A)(4).

the Warden, who then has 30 days to conduct any necessary investigation and make a decision.

The third and final level of the grievance procedure enables the inmate to appeal the Warden's decision to the Commissioner of Corrections.  Any appeal to the Commissioner must be filed within 30 days of the Warden's response and the Commissioner in turn has 30 days to decide.  The Commissioner's decision is final.  <u>See</u> PPD 1.16, at 3-4; Inmate Manual, § D.  Until the Commissioner has responded to the grievance, the inmate has not fully exhausted all of his or her administrative remedies.

The policy expressly stresses the importance of the filing deadlines to inmates cautioning them that "[t]he timeframes set out in this policy are **mandatory**. . . . Failure to comply with the timeframes . . . will result in a request or grievance being dismissed as untimely.  **Inmates should be aware that failure to comply with these timeframes might impact their right to pursue any other legal remedy**."  PPD 1.16(IV)(E) (bold emphasis in original).

Anthony Perfetto is an inmate at the New Hampshire State Prison (NHSP) in Berlin, following a 2002 conviction for possession of child pornography.  At all times relevant to this motion, however, he was incarcerated at the NHSP facility in

Concord, where he alleges the constitutional violations at issue here occurred.

Perfetto's surviving claims of unconstitutional prison conditions include:  (1) deprivation of sanitary conditions, (2) denial of water, (3) failure to properly protect his safety, (4) use of excessive force, (5) denial of adequate medical care, (6) retaliation, (7) denial of access to the courts, and (8) denial of the right to petition the government to redress grievances through the administrative grievance procedure.[7]

The defendants here argue that the case must be dismissed because the plaintiff has not properly exhausted his available administrative remedies with respect to any of his claims.  The court agrees.  As explained below, in many instances, Perfetto failed to take even the initial formal step of filing an IRS. When he did file an IRS, Perfetto either failed to do so within the timeframes set forth in the prison's grievance policy, or failed to appeal, timely or otherwise, the prison's response to his initial request for administrative relief.  This failure to

---

[7]  On June 20, 2007, the court dismissed all of the official capacity claims against the defendants, as well as Perfetto's claims alleging denials of clothing, food, appropriate housing, lower security classification, adequate mental health care, rehabilitative programming, religious practice, personal property, and verbal harassment.

9

fully and properly exhaust administrative remedies is fatal to his request for judicial remedies.

**1.     Deprivation of sanitary conditions and water**

Perfetto alleges that between May 15-17, 2004, and at various times over the following months, Corrections Officers Ash, Charter, Fedele, Valenti, and another unidentified officer subjected him to unsanitary conditions by denying him access to a shower, a toilet, toiletries, clothing, silverware, and other items necessary to maintain minimally adequate hygiene.  He further claims that on one occasion, after being denied use of the facilities, he had no choice but to defecate on the floor of his cell before Corrections Officer Charter instructed him to roll in his own excrement, an instruction with which he complied. Perfetto also alleges that between May 15-17, 2004, and May 28-June 1, 2004, an unidentified "John Doe" officer refused to allow him to have water with his meals or medications, and that he had to drink his own urine for hydration.

Nearly one year later, on May 3, 2005, Perfetto filed an IRS with the unit manager complaining of these incidents.  The manager promptly responded to Perfetto's IRS.  Dissatisfied, Perfetto filed a grievance with the Warden of his facility who

denied the grievance as unsubstantiated.  Perfetto never appealed
the Warden's response to the Commissioner of Corrections.[8]

On June 21, 2004, Perfetto filed an IRS inquiring about the
status of a complaint he made against Corrections Officer Charter
in May or June 2004.[9]  In response, Perfetto was informed that he
would need to file an IRS with the NHSP's "Investigations"
Department to get the information he sought.  Perfetto filed
another IRS on August 4, 2004, claiming harassment by Corrections
Officer Charter and another NHSP employee.  In response, a
commanding officer indicated that he felt the situation had been
satisfactorily resolved.  Over nine months later, Perfetto filed
an untimely grievance appeal.  The Warden denied it as
unsubstantiated and there is no evidence to suggest that Perfetto

---

[8]  At the April 2, 2008 hearing on summary judgment,
Perfetto argued that a June 6, 2005 grievance appeal he filed
with the Commissioner related to his deprivation of sanitation
claims, thereby perfecting his appeal.  The court, after a review
of this grievance, does not agree, and concludes, based on its
date and content, that the June 2004 document in question
referenced a different IRS and grievance not involved in this
case.  Further, as explained supra, both the initial IRS and
grievance were untimely, and thus did not constitute proper
exhaustion under Woodford, 126 S. Ct. at 2387.

[9]  The record is not clear as to what incident was
referenced in the complaint.  Drawing all inferences in
Perfetto's favor, the court will infer that it related to his
allegation that Corrections Officer Charter ordered Perfetto to
roll in his own waste sometime between May 15-17, 2004.

completed the administrative remedy process by appealing the
Warden's denial to the Commissioner of Corrections.

**2.   <u>Failure to protect</u>**

NHSP re-classified Perfetto as a "protective custody" inmate
and moved him from the prison's general population into its
Secure Housing Unit (SHU) for periods in August and September of
2003.  Perfetto alleges that while he was in protective custody
in the SHU, defendants Bell, Moyer, and Washburn nevertheless
housed him with "general population" inmates on four separate
occasions.  Perfetto also claims that defendants Flynn, Gauthier,
Moquin, and Parent moved him to a tier of the prison that housed
an inmate included on his "keep away" list.  He further alleges
that Corrections Officer Flynn later witnessed another inmate
assault him, but failed to move him to another cell to protect
his safety.

With respect to his complaint about being housed with
general population inmates, Perfetto never submitted an IRS, but
filed a grievance with the Warden nearly three years after the
alleged incidents.  The Warden responded that the grievance was
untimely filed and therefore denied.  Perfetto then filed a
grievance with the Commissioner, which was denied for the same
reason.  The record before the court indicates that Perfetto

12

never filed an IRS or grievance regarding the allegations that he was housed near an inmate on his "keep away" list and that he was held in a cell with a physically threatening inmate.

## 3.   **Excessive force**

Perfetto alleges three separate instances of excessive force by NHSP employees.  He alleges: (1) in May 2004, Corrections Officer Fedele slammed him into the wall and ripped a crucifix off of his neck; (2) later that same day Corrections Officer Edmark pushed his face into the wall and threatened him; and (3) in July 2004, he was drenched with a hose by another inmate at the direction of Corrections Officer Charter while Charter stood by and laughed.

With respect to the May 2004 allegations of excessive force, Perfetto first filed an IRS nearly a year later.  The prison responded to Perfetto that he had admitted he had been off his medication and had apologized for the incidents.  Perfetto then filed a grievance with the Warden.  He did not appeal to the Commissioner.

The record as to the July 2004 incident indicates that Perfetto did not file an IRS until some nine months later and never appealed to the Warden or Commissioner.

4.   **Denial of adequate medical care**

Perfetto alleges that, in the late summer and early fall of
2003, Corrections Officer Charter and Unit Manager Moyer
repeatedly denied him adequate medical care by either allowing
his prescriptions to run out after he had made timely requests
for refills, or actively withholding medication from him after it
had been received by NHSP.  The record contains no evidence that
an IRS or grievance regarding this complaint was ever filed
regarding this issue.

Perfetto also claims that his eyeglasses went missing during
this same period so he filed IRS forms inquiring whether anyone
had found them.  NHSP personnel responded in the negative and
Perfetto eventually found his eyeglasses.  Nearly three years
later, he filed grievances with the Warden and Commissioner over
the missing eyeglasses; both were denied as untimely and he did
not appeal.

Perfetto makes additional allegations regarding the
dispensing of his medications.  He claimed in an IRS filed in May
2004 that Corrections Officer Iseman dispensed medication to him
twice in one particular day rather than once as prescribed.  An
NHSP employee responded that Perfetto had admitted to taking the
medications contrary to his prescription.  Perfetto makes no

14

claim that he appealed that decision to the Warden or the Commissioner.

He further alleges that during the summer of 2004, unidentified staff at NHSP dispensed twice the prescribed dosage of his medication to him, and that in November 2006, Corrections Officer Flynn withheld medication from him.  The record before the court contains no claim or indication that Perfetto filed an IRS or grievance with respect to either the 2004 or 2006 claims.

**5.   <u>Retaliation</u>**

According to Perfetto, NHSP personnel took retaliatory action against him for filing grievances and contesting his treatment.  Perfetto claims that two days after he filed an IRS requesting additional IRS forms, counselor McGrath responded in an "unprofessional" manner.

He also alleges the following additional instances of retaliation:

- On August 4, 2006, Col. Brown singled Perfetto out for a cell search during which newspapers were taken from him;

- On August 7 and August 8, 2006, Lt. Michaud singled Perfetto out for cell searches during which his typewriter, magazines, and a book were taken from him;

- On August 10, 2006, Unit Manager Bilodeau intercepted an IRS Perfetto had filed that day, and threatened him with disciplinary action for an unrelated IRS he filed on July 29;

- Also on August 10, 2006, Col. Brown and Sgt. O'Brien singled Perfetto out for a cell search during which legal papers were destroyed and his cell was left in disarray.

Perfetto does not claim that he filed an IRS or grievance with respect to any of these allegations of retaliatory action.

**6.   Denial of access to the courts**

According to Perfetto, the destruction of his legal papers during the August 10, 2006 cell search, discussed _supra_, left him at a disadvantage in preparing a complaint and chilled his pursuit of judicial and administrative remedies.  Perfetto makes no claims opposing the defendants' position that no IRS or grievance to this event was ever filed.

**7.   Denial of right to petition the government for a redress of grievances through the administrative grievance procedure**

Perfetto's final claim alleges that, in the summer of 2004, Corrections Officers Charter, Edsall, Isabelle, and an unidentified "John Doe" officer denied him IRS forms, grievance forms, pens, and pencils.  He reports that during this time period, IRS forms were made available to him only two to three

16

times a week.  The record contains no indications that he made any attempt to lodge a written complaint.

Of course, Perfetto cannot be held accountable for any failure-to-exhaust if prison officials have rendered his administrative remedies unavailable to him.  See, e.g., Abney v. McGinnis, 380 F.3d 663, 667 (2d Cir. 2004); Dale v. Lappin, 376 F.3d 652, 656 (7th Cir. 2004); Mitchell v. Horn, 318 F.3d 523, 529 (3d Cir. 2003); Miller v. Norris, 247 F.3d 736, 740 (8th Cir. 2001).  The PLRA is clear that proper exhaustion of administrative remedies is only of those remedies "as are available."  42 U.S.C. § 1937e(a).  The test for determining whether administrative remedies are available is objective and asks whether "a similarly situated individual of ordinary firmess [would] have deemed them available."  Hemphill v. New York, 380 F.3d 680, 688 (2d Cir. 2004) (internal quotation marks omitted); see, e.g., Macias v. Zenk, 495 F.3d 37, 44-45 (2d Cir. 2007) (remedies may not be "available" to prisoner threatened by prison employee); Beltran v. O'Mara, 405 F. Supp. 2d 140, 153 (D.N.H. 2005) (remedies potentially rendered unavailable to inmate where prison made misleading statements regarding whether complaint is grievable).

Other than Perfetto's bare assertions, there is nothing in the record to suggest that he was denied access to the IRS forms

17

or dissuaded to a degree that effectively made administrative remedies unavailable to him.  During the period complained of, Perfetto filed ten IRS forms with the prison relating to other issues not involved in this habeas petition.[10]  Even taking Perfetto at his word that the prison limited his access to the IRS and grievance forms to two or three times a week, the grievance procedure or remedy was nonetheless always "available" to him in the sense that the means to take advantage of it were available to him frequently enough to comfortably meet all of its procedural requirements and deadlines.

**CONCLUSION**

Even accepting as true the facts asserted in Perfetto's summary judgment opposition papers, and viewing those facts in the light most favorable to him, the court discerns no evidence to suggest that the plaintiff exhausted his administrative

---

[10]  July 6, 2004 (request to consult with NHSP employee); July 7, 2004 (legal inquiry regarding brother); July 9, 2004 (request for legal paperwork); July 9, 2004 (appeal of NHSP disciplinary action); July 15, 2004 (visitor request); July 22, 2004 (request for witness to signature); July 22, 2004 (appeal of NHSP disciplinary action); July 30, 2004 (prescription refill request); July 31, 2004 (additional clothes and supplies request), August 4, 2004 (request for transfer of NHSP employees).

18

remedies[11] with regard to any of the claims involved in this litigation.  See Anderson, 477 U.S. at 255-56.  The defendants' motion for summary judgment (document no. 92) on their failure-to-exhaust defense is therefore granted.  The plaintiff's claims are all dismissed without prejudice for his failure to properly exhaust administrative remedies.  The clerk shall enter judgment accordingly and close the case.

       **SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge


Date: April 8, 2008

cc:  Anthony I. Blenkinsop, Esq.
     Jonathan A. Perfetto, pro se

---

       [11]  Perfetto filed a motion on March 24, 2008, entitled "Motion to Exhaust Remedies," in which he acknowledged that he failed to properly exhaust his administrative remedies, and requested additional time to fully exhaust.  At the hearing on the motion, he again acknowledged his failure to properly exhaust on all claims except the deprivation of sanitary conditions claim.  Despite this concession, the court addressed the remainder of his claims for the sake of thoroughness.